# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Don Byerly Barrett,<br><br>　　　　Plaintiff,<br><br>vs.<br><br>Maricopa County Sheriff's Office, et al.,<br><br>　　　　Defendants. | No. CV 08-2095-PHX-GMS (MHB)<br><br>**ORDER** |

Plaintiff Don Byerly Barrett, who was confined in the Fourth Avenue Jail in Phoenix, Arizona, filed a *pro se* civil rights Complaint pursuant to 42 U.S.C. § 1983, which the Court dismissed with leave to amend. (Doc.# 1, 5.) On January 18, 2009, counsel filed a notice of appearance and a First Amended Complaint. (Doc. ##7, 8.) The Court did not issue a Screening Order regarding the First Amended Complaint. See 28 U.S.C. § 1915A(a). Defendants Maricopa County, the Maricopa County Board of Supervisors (MCBS) and the Director of Correctional Health Services (CHS) now move to dismiss the First Amended Complaint. (Doc. #17.) Defendants Sheriff Joseph Arpaio and Ava Arpaio, his wife, (Arpaio) also move to dismiss and join the other Defendants' motion. (Doc. #18.) The motions are fully briefed. (Doc. ##20, 21, 22.)

The Court will grant Arpaios' motion and grant the motion of the other Defendants in part and deny it in part.

**I.    Background and Summary of Motions**

Plaintiff alleged five causes of action for violations of state and federal law. He sues

Maricopa County; Arpaio; the MCBS "individually"; the CHS Director; John Does I-X; Jane Does I-X; Black Corporations I-V; White Partnerships I-V; and XYZ Entities 1-10. He seeks compensatory and punitive relief.

Plaintiff's claims arise out of his incarceration in the Maricopa County Jail during late June and July, 2008, and problems he allegedly encountered there in obtaining his anticonvulsant medications to control epileptic seizures. (Doc. #8 ¶¶ 25-45.) In his First Cause of Action, Plaintiff alleged negligence by all Defendants in failing to provide medical care and negligence in hiring and training employees. (Id. at 13-15.) For the Second Cause of Action, Plaintiff alleged gross negligence by all Defendants regarding his medical care. (Id. at 15-17.) For the Third Cause of Action, Plaintiff alleged that Arpaio, the Maricopa County Sheriff's Office (MCSO), and Director of CHS failed to train employees and had unconstitutional policies regarding medical care. (Id. at 17-20.) For the Fourth Cause of Action, Plaintiff alleged deliberate indifference to his medical needs by Arpaio, MCSO, and the CHS Director. And for the Fifth Cause of Action, Plaintiff alleged that Arpaio and MCSO violated the Americans With Disabilities Act (ADA) because Plaintiff was entitled to reasonable accommodations. (Id. at 21.)

Maricopa County, the MCBS, and the Director of CHS move to dismiss on the grounds that

- Plaintiff failed to exhaust his administrative remedies;
- MCBS must be dismissed because it is a non-jural entity;
- Maricopa County is not responsible for the operation of the Maricopa County Jails;
- Plaintiff has violated the Notice of Claim statute with regard to his state law claims of negligence and gross negligence;
- Maricopa County cannot be vicariously liable for the conduct of individuals;
- Plaintiff has failed to state a claim for "policy maker" liability;
- Maricopa County is not liable for punitive damages;
- Plaintiff has failed to state a claim under the Privileges and Immunities Clause of the Fourteenth Amendment;
- Plaintiff has failed to state a claim under 42 U.S.C. §1985;
- Plaintiff"s claims allege medical negligence which falls short of the constitutional requirement of deliberate indifference;
- Plaintiff has failed to state a claim for violation of the Equal Protection Clause of the Fourteenth Amendment;
- Plaintiff has failed to state a claim for violation of the Eighth Amendment's prohibition on cruel and unusual punishment;
- and Plaintiff has failed to state a claim for violation of the Fourth Amendment's prohibition of unreasonable searches and seizures.

Arpaio joins the motion and asserts the following additional defenses:

- Arpaio does not control prisoner medical care or treatment;
- Plaintiff failed to allege a causal nexus between Arpaio and his injuries;
- Plaintiff failed to adequately allege any deprivation of a right suffered as a result of a policy promulgated by Arpaio;
- Plaintiff fails to sufficiently allege Constitutional or other civil rights violations against Arpaio.

The Court will address the parties' arguments but not in the order raised.

## III. Preliminary Issue

The Court will dismiss, without prejudice, John Does I-X; Jane Does I-X; Black Corporations I-V; White Partnerships I-V; and XYZ Entities 1-10. Plaintiff alleged no specific conduct by any of these persons or entities and thus failed to link them to any harm suffered. See Rizzo v. Goode, 423 U.S. 362, 371-72, 377 (1976); see also 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915(A)(b)(1); 42 U.S.C. § 1997e(c)(1). Plaintiff may use the discovery processes to obtain the names of the persons whom he believes violated his constitutional rights. If Plaintiff discovers the identities of these fictitiously-named defendants through the discovery process, or otherwise, he may seek leave of the Court to amend to name these individuals and entities.

## IV. Defendants' Motions to Dismiss

### A. Exhaustion

#### 1. Legal Standard

Under the Prison Litigation Reform Act (PLRA), a prisoner must exhaust available administrative remedies before bringing a federal action concerning prison conditions. See 42 U.S.C. § 1997e(a); Griffin v. Arpaio, 557 F.3d 1117, 1119 (9th Cir. 2009). Exhaustion is required for all suits about prison life, Porter v. Nussle, 534 U.S. 516, 523 (2002), regardless of the type of relief offered through the administrative process, Booth v. Churner, 532 U.S. 731, 741 (2001). And a prisoner must complete the administrative review process in accordance with the applicable rules. See Woodford v. Ngo, 548 U.S. 81, 92 (2006).

Exhaustion is an affirmative defense. Jones v. Bock, 549 U.S. 199, 212 (2007). Thus, the defendant bears the burden of raising and proving the absence of exhaustion. Wyatt v.

| | |
|---|---|
| 1 | Terhune, 315 F.3d 1108, 1119 (9th Cir. 2003). Because exhaustion is a matter of abatement |
| 2 | in an unenumerated Rule 12(b) motion, a court may look beyond the pleadings to decide |
| 3 | disputed issues of fact. Id. at 1119-20. Further, a court has broad discretion as to the |
| 4 | method to be used in resolving the factual dispute. Ritza v. Int'l Longshoremen's & |
| 5 | Warehousemen's Union, 837 F.2d 365, 369 (9th Cir. 1988) (quotation omitted). |

### 2. Parties' Contentions

Defendants assert that Plaintiff failed to exhaust his administrative remedies as to any of the claims in the First Amended Complaint. They submit the affidavit of Sergeant Susan Fisher and the MCSO Policy DJ-3, Inmate Grievance Procedure, in support. (Doc. #17, Ex. 1, Fisher Aff. and Attach. 1.) According to Defendants, Plaintiff filed three grievances while he was incarcerated. The first, No. 08-09719 was filed on July 21, 2008, and deals with only one of the issues in this lawsuit—providing the medication Depakote—and was informally resolved. Defendants assert that Plaintiff failed to seek further administrative review of this grievance, so the informal resolution is incomplete and does not satisfy the complete exhaustion requirement of the PLRA. (Ex. 1, Fisher Aff. ¶ 7.) Defendants assert that Plaintiff's other grievances, No. 08-12769 (request for a haircut) and No. 08-17427 (heating and air conditioning) are unrelated to the issues in this lawsuit. (Id., Attach. 4.) Defendants contend that before retaining counsel, Plaintiff filed a pro se lawsuit in which he admitted that he failed to exhaust his administrative remedies. (Doc. #1 at 3.)

Plaintiff argues that the PLRA provides that "[n]o action shall be brought . . . by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted" and that Plaintiff was a pretrial detainee, not a prisoner. (Doc. #20 at 2.) Plaintiff further argues that he was incarcerated by Maricopa County from July 2008 through on or about January 8, 2009; that his original Complaint was filed on November 12, 2008, and dismissed by this Court on December 17, 2008; and that the First Amended Complaint was filed on January 18, 2009. (Id.) He contends that the PLRA exhaustion requirement does not apply to a plaintiff who is no longer confined. Id. citing Valdiva v. County of Santa Cruz, 2008 WL 4065873 (N.D. Cal. 2008).

1 | Plaintiff further argues that the PLRA does not require exhaustion of administrative remedies in suits for money damages. (Id., citing Lunsford v. Jumao-As, 155 f.3d 1178, 1178 (9th Cir. 1998).) He disputes Defendants' argument that all remedies must be exhausted as to all claims. (Id. at 3, ref. Doc. #17 at 4, citing Graves v. Norris, 218 F.3d 884 (8th Cir. 2000).)

In their reply, Defendants assert that Plaintiff' lawsuit was brought in November 2008 while he was in custody and that filing of the First Amended Complaint is irrelevant. (Doc. #21 at 2.)

### 3. Analysis

The Court will grant Defendants' motion as to all claims except those relating to Plaintiff's grievance dated July 21, 2008. Defendants provide evidence of the availability of a grievance procedure and Plaintiff's failure to exhaust his remedies under that procedure as to the majority of the claims in the First Amended Complaint. Plaintiff fails to rebut Defendants' evidence, arguing instead that he was not required to exhaust remedies; however, the Court must reject Plaintiff's arguments.

Contrary to Plaintiff's suggestion, it is well settled that the exhaustion requirements of the PLRA apply to pretrial detainees as well as prisoners. See e.g. Panaro v. City of North Las Vegas, 432 F.3d 949, 950, 952 (9th Cir. 2005). And the Supreme Court has held that exhaustion is required even if money damages are not available through the grievance process. Booth, 532 U.S. at 733-34. Moreover, Plaintiff was a prisoner within the meaning of the PLRA exhaustion requirement at the time he brought his lawsuit. See Vaden v. Summerhill, 449 F.3d 1047, 1050 (9th Cir. 2006). "The word 'brought' properly focuses attention on what the prisoner-plaintiff does. The complaint is 'brought' by the prisoner when he submits it to the court. Accordingly, the prisoner must have entirely exhausted administrative remedies by this point." Id. It is undisputed that Plaintiff was in the custody of MCSO at the time he brought his Complaint in November 2008; that Plaintiff was not in the custody of the MCSO at the time of the filing of the First Amended Complaint does not

relieve him of his obligation to exhaust remedies prior to bringing the lawsuit.[1] The PLRA also requires exhaustion of ADA claims. O'Guinn v. Lovelock Corr. Ctr, 502 F. 3d 1056, 1059-62 (9th Cir. 2007).

Plaintiff is correct, however, that the PLRA does not require that the entire action be dismissed if some claims are not exhausted. Jones, 549 U.S. at 219-24. The Court finds that Defendants have not met their burden to demonstrate failure to exhaust remedies as to Plaintiff's grievance dated July 21, 2008, in which he complained that he received medication for his seizures while in "overflow"—Depakote twice daily—but that since his move to B-pod, he had not received any medication. He further asserted that he had been without Depakote for five days. (Doc. #17, Fisher Aff., Attach. 4.) The Grievance Form indicates that this matter was informally resolved by the officer who noted that the Depakote was renewed on July 21, 2008.

In Brown v. Valoff, 422 F.3d 926, 934-35 (9th Cir. 2005), the Ninth Circuit held that a prisoner need not continue to exhaust additional levels of review if he has either received all "available" remedies at an intermediate level of review or "been reliably informed by an administrator that no remedies are available." Id. at 935. Defendants bear the burden of demonstrating "that pertinent relief remained available, whether at unexhausted levels of the grievance process or through awaiting the results of the relief already granted as a result of the process." Id. at 936-37. Relevant evidence of an available remedy includes regulations or official directives describing the scope of the administrative review process, documentary or testimonial evidence from relevant prison officials, and information provided to the prisoner. See id. at 937. To determine whether remedies were available, the court examines prison officials' responses to the inmate grievances and the actual grievance procedures. See id. at 937-43. The Ninth Circuit specifically rejected the notion that an inmate must over-

---

[1] The Arizona Department of Corrections website indicates that a Don B. Barrett, born May 14, 1949, was admitted to ADC January 8, 2009, under prisoner #237865. http://www.azcorrections.gov/Inmate_DataSearch/results_Minh.aspx?InmateNumber=237865&LastName=BARRETT&FNMI=D&SearchType=SearchInet.

exhaust—that is, appeal to higher levels—once relief is no longer available. Id. at 935, n. 10.

Here, although Defendants assert that Plaintiff failed to complete the grievance process as to this claim, they provide no evidence of a further available remedy following the informal resolution, and it appears that Plaintiff received all that he asked for in his grievance. (Doc. #17, Fisher Aff. ¶ 7.) Defendants do not meet their burden to show failure to exhaust as to the five-day period when Plaintiff did not receive his Depakote. (See Doc. #8 ¶ 24.) The Court notes that in his First Amended Complaint, Plaintiff alleged that he suffered seizures during some period when he did not receive his medication. (Id. ¶ 43.)

All unexhausted claims will be dismissed without prejudice. This includes Plaintiff's ADA claims, Fifth Cause of Action, which allege that Plaintiff was entitled to reasonable accommodations. (Doc. #8 ¶ 117.) The July 21, 2008 grievance would not put Defendants on notice of a request for reasonable accommodations or any other ADA claims. See Griffin, 557 F.3d at 1119 (when a prison's grievance procedures do not specify the requisite level of detail, "a grievance suffices if it alerts the prison to the nature of the wrong for which redress is sought.")

### B. Notice of Claim

Defendants assert that Plaintiff did not file a Notice of Claim as required by Ariz. Rev. Stat. § 12-821.01 for state or common law claims against a public entity or public employee; the statute specifies that "Any claim which is not filed within one hundred eighty days after the cause of action accrues is barred and no action may be maintained thereon." (Doc. #17 at 7-8; Doc. #18 at 3-4.)

Plaintiff concedes that he filed no Notice of Claim as of October 3, 2009.[2] (Doc. #20 at 6, 15.)

---

[2] The argument regarding failure to file a Notice of Claim is more appropriately raised in a motion for summary judgment when the argument relies on matters outside the Complaint, but here Plaintiff is represented by counsel and concedes failure to file. The Court notes that Arpaio filed an affidavit regarding Plaintiff's failure to file a Notice as to him. (Doc. #19.)

The only remaining claim involves non-receipt of Plaintiff's medication for a period ending approximately July 21, 2008; the Notice of Claim had to be filed within 180 days from that time. Because it was not, the claims for negligence and gross negligence—the First and Second Causes of Action—will be dismissed with prejudice.

### C. Maricopa County and Policy-Maker Liability

#### 1. Parties' Contentions

Defendants Maricopa County, the MCBS, and the Director of CHS assert that in Arizona, the responsibility for operating jails and caring for prisoners is placed by law upon the sheriff, see Ariz. Rev. Stat. §§ 11-441(A)(5), 31-101, who is a county officer, Ariz. Const. Art. 12 §§ 3, 4. (Doc. #17 at 7.) They assert that Maricopa County is not responsible for the operation of the jails and has neither the legal power to hire or terminate the Sheriff's employees nor a right of control over the Sheriff or his deputies in the performance of their statutorily-prescribed duties. See Ariz. Rev. Stat. §11-251. Defendants argue that all of Plaintiff's allegations against the County regarding the operation of the jail, the jail's policies and procedures and employees of the jail (Doc. #8 ¶¶ 7, 9, 73, 75, 93, 99, 100-106, 108-113) fail to state a claim against Maricopa County and must be dismissed. (Doc. #17 at 7.) Maricopa County also asserts that it cannot be held vicariously liable. Monell v. New York City Dep't. of Soc. Ser., 436 U.S. 658, 691 (1978).

Plaintiff responds that the county meaningfully participates in the operation of the jails. (Doc. #20 at 5-6, citing Falcon v. Sandoval v. Maricopa County, 144 P. 3d 1254, 1256 (2006).) He asserts that the County can be vicariously liable because "it is believed that the conditions of the jails may have contributed to the events which led to the filing of this Complaint" and that the Court must accept the allegations in the Complaint as true. (Id. at 6.) He argues that the Court must allow discovery on this. (Id. at 6-7.) Defendants argue in reply that Falcon does not address the fact that the Sheriff has the authority to run the county jail. (Doc. #21 at 7.) They also reassert that a municipality cannot be held liable on a *respondeat superior* theory and argue that Plaintiff is not entitled to discovery to correct defects in his pleadings. (Id. at 8.)

In addition, the County argues that it may not be held liable unless its policy or custom caused the alleged constitutional injury. (Doc. #17 at 9, citing Monell, 436 U.S. at 694; Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit, 507 U.S. 163, 166 (1993). To state a claim against a municipal defendant, a plaintiff must allege a policy or custom regarding his injury and explain how the custom caused the injury. (Id., citing Sadoski v. Mosley, 435 F.3d 1076, 1080 (9th Cir. 2006).) Defendants assert that although Plaintiff makes various allegations regarding tracking and distributing prescription medications, he does not allege how the conduct reflects county policy. (Id. at 9-10, ref. Doc. #8 ¶¶ 30-36, 51-58.) Defendants argue that Plaintiff fails to allege how the system of medication tracking caused him to suffer any harm, particularly since he alleged that he did not receive his medication not because of a tracking issue but because his "chart was not available." (Id. at 10, ref. Doc. #8 ¶ 34). They further assert that although Plaintiff identifies the Director of CHS as "responsible for overseeing the medical services provided at Maricopa County jails," Plaintiff fails to allege that the director authored, implemented or maintained a policy or custom pertinent to Plaintiff's alleged injury. (Id., ref. Doc. #8 ¶ 94.) Defendants argue that the pleadings are insufficient under Ascroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009), and Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007), which require a plaintiff to frame a complaint with enough factual matter when taken as true, suggests that he is entitled to relief. (Doc. #17 at 11.)

Plaintiff responds that the Complaint does, in fact, state a claim for policy-maker liability and argues that in Leatherman, the Supreme Court held that lower courts were improperly applying a heightened pleading standard in civil rights cases alleging municipal liability under § 1983. (Doc. #20 at 7, citing Leatherman, 507 U.S. at 166.) He assert that it is premature to dismiss claims without discovery. In their reply, Defendants argue that Plaintiff is not entitled to discovery before a Rule 12(b)(6) motion and that Iqbal requires more than threadbare recitals of the elements of a claim. (Doc. #21 at 9.)

### 2. Analysis

The Court will not dismiss the Director of CHS or Maricopa County.

The Ninth Circuit recently stated that "[p]rior to Bell Atlantic Corp. v. Twombly, [citations omitted], we held that a plaintiff 'does not need to show with great specificity how each defendant contributed to the violation of his constitutional rights. Rather, he must state the allegations generally so as to provide notice to the defendants and alert the court as to what conduct violated clearly established law.'" al-Kidd v. Ashcroft, 580 F.3d 949, 974 (9th Cir. 2009) (citations omitted). The court noted that Iqbal clarified Twombly's application to civil rights cases; the Supreme Court held that a pleading "that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action' is insufficient to state a claim under Rule 8 of the Federal Rules of Civil Procedure." al-Kidd, 580 F.3d at 974 (citing Iqbal, 129 S. Ct. at 1949).

Municipalities can be held liable for deprivations of constitutional rights resulting from their policies or customs, Monell, 463 U.S. at 690-91, and by showing that the alleged constitutional violation was caused by a failure to adequately train municipal employees. City of Canton, Ohio v. Harris, 489 U.S. 378, 388-91 (1989). The Ninth Circuit has held that plaintiffs need not specifically allege a custom or policy; it is enough if the custom or policy can be inferred from the allegations of the complaint. Shaw v. State of California Dept. of Alcoholic Beverage Control, 788 F.2d 600, 610 (9th Cir. 1986) (court found the complaint sufficient to allege "a pattern or a series of incidents" of unconstitutional discriminatory enforcement of the laws where plaintiffs, who are black, alleged that the police had engaged in a campaign of race discrimination, resulting in the revocation of their liquor license; alleged that for a period of almost four years, police officers entered the bar as many as 18 times a shift, repeatedly brought police officers from other jurisdictions into the bar, attempted on more than one occasion to persuade the plaintiffs' employees to quit, tried more than once to dissuade customers from entering the bar, and arranged for multiple regulatory inspections by other City agencies; and alleged that other bars, owned by whites, were not treated in the same manner).

Health care in the jail is the responsibility of the County, and CHS is an administrative

agency of Maricopa County created to carry out that statutory duty.[3] In his First Amended Complaint, Plaintiff alleged that CHS does not maintain a list of pretrial detainees on prescription medications. (Doc. #8 ¶ 51.) He also alleged that "Defendants do not consistently ensure that all detainees actually receive all prescription medications as ordered." (Id. ¶ 53.) He alleged that the pill nurse on "pill pass" does not have a list of which pretrial detainees are supposed to come for medication and does not know whether a detainee who is supposed to receive medication is in court, church, recreation, or sleeping; he alleged that if a detainee does not come to receive medication, the nurse may enter into the detainee's record that he refused medication, even if it is not known why the detainee did not come to the pill pass. (Id. ¶¶ 57-58.)

As Defendants note, the First Amended Complaint does not identify any policies or customs that Plaintiff specifically attributes to the Director of CHS, and Plaintiff's response does not identify any. (See Doc. #20 at 7.) In fact, Plaintiff has done little to assist the Court with this issue; he merely asserts that he states a claim for policy-maker liability.[4] And alleging that the Director of CHS is responsible for overseeing the medical services provided at the jail is insufficient to state a policy or custom, and there is no *respondeat superior* liability in a § 1983 action. Nevertheless, the Court finds that customs or practices can be inferred from the allegations referred to above, and it can be inferred that the customs or practices resulted in the deprivation.

When individuals, such as the CHS Director are sued in an official capacity, the real party in interest is the entity of which the officers are agents. Kentucky v. Graham, 473 U.S. 159, 165-66 (1985) (quoting Monell, 436 U.S. at 690 n.55). In this case, that entity is Maricopa County.

The Court will deny the motion seeking dismissal of Maricopa County and the

---

[3]See http://www.maricopa.gov/Corr%5FHealth/invite.asp.

[4]The First Amended Complaint is 24 pages and 123 paragraphs, and many allegations are general and conclusory.

1  Director of CHS.

   **D.  Arpaio**

Arpaio argues that he is not responsible for the health care of inmates in the Maricopa County Jails and that the responsibility is that of the county. (Doc. #18 at 5, citing Ariz. Rev. Stat. § 11-291(A).) He alleges that the allegations as to his conduct are vague and non-specific and that the generally vague allegations about Arpaio as a policy maker do not explain how he caused the conditions that allegedly deprived Plaintiff of proper medical care. (Id. at 5-6, 8, ref. Doc. #8 ¶¶ 99, 100.) Arpaio also argues that Plaintiff has not shown an affirmative link between his conduct and the Plaintiff's injury and notes that there is no *respondeat superior* liability. (Id. at 6, 7-8.) He asserts that Plaintiff has not alleged that Arpaio personally participated in the alleged deprivation of Plaintiff's rights, or was aware of widespread abuses and failed to act or formed policies resulting in Plaintiff's injuries. (Id. at 7.) Plaintiff merely alleged that Arpaio breached his duties to Plaintiff "and then cites a laundry list of acts by the MCSO purportedly related to the 'medical care and treatment of persons incarcerated in Maricopa County jails' while seemingly ignoring his own allegations that the medical care function has been officially delegated to CHS." (Id.) Arpaio argues that this is insufficient under Iqbal and Twombly.

Plaintiff does not respond to Arpaio's separate motion.

**2.  Analysis**

Plaintiff has not responded to the motion, and under Local Rule of Civil Procedure 7.2 (i), the Court may grant the motion to dismiss based solely Plaintiff's failure to respond. To the extent that Plaintiff may have considered his response to Maricopa County's argument regarding policy-maker liability as sufficient, the Court notes the following: Plaintiff made few allegations against non-medical jail personnel that are also arguably related to the denial of medication—the only exhausted claim. The most specific allegation is that "[d]etention officers do not know which pretrial detainees in their care are taking needed and prescribed medications." (Doc. #8 ¶ 53.) Plaintiff also alleged that after Plaintiff was moved to a regular cell on July 14, 2008, his medications stopped and he was told that his "chart" was

1  unavailable. (Id. ¶¶ 33-34.) Plaintiff alleged that Arpaio and others were deliberately
2  indifferent in failing to train or adequately train employees in appropriate policies for
3  provision of medical care and that they should have known of unspecified unconstitutional
4  policies, protocols, and customs. (Id., Third Cause of Action, ¶¶ 99, 101.) He further alleged
5  that Defendants "demonstrated deliberate indifference to [Plaintiff's] medical needs and
6  failed to properly observe and monitor [Plaintiff] following his booking into jail. Their
7  indifference, failure to monitor, and other failures caused or contributed to injuries suffered
8  . . . ." (Id., Fourth Cause of Action, ¶ 109).

The Court finds that these allegations are insufficient to state a claim against Arpaio in either his individual or official capacity. Plaintiff does not allege any personal involvement by Arpaio regarding the alleged failure to provide Plaintiff his needed medications. And the allegations are too vague and conclusory to state claims for policies or practices implemented by Arpaio—it is unclear what the policy or practice is or how it resulted in the alleged deprivation. See Iqbal, 129 S. Ct. at 1949.

The Court will dismiss Arpaio.

**E.  MCBS**

**1.  Parties' Contentions**

Defendants argue that the Board of Supervisors is a non-jural entity that cannot be sued; the powers of such a board are found in Ariz. Rev. Stat. § 11-251 and there is no authority to sue or be sued. (Doc. #17 at 6-7.) Plaintiff argues that § 11-201 provides that "[t]he powers of a county shall be exercised only by a board of supervisors or by agents and officers acting under its authority and authority of law." (Doc. #20, citing Falcon, 144 P. 3d at 1257 (holding that the board of supervisors is the chief executive officer of the county). In their reply, Defendants assert that Falcon has no bearing on whether the MCBS is a jural entity; in Falcon the Arizona Supreme Court determined that the County Board of Supervisors was the County's Chief Executive Officer for purposes of Ariz. R. Civ. P. 4.1(i) and that service of a Notice of Claim upon the Clerk of the Board would have satisfied the Notice of Claims service requirements, Ariz. Rev. Stat. § 12-821.01. (Doc. #21 at 6, citing

1 | Falcon, 144 P.3d at 1259.)

### 2. Analysis

Although Plaintiff purports to sue the Board members "individually," he has not named the individual Board members or alleged that any Board member directly violated his rights. The Court notes that a Board of Supervisors has the power to enter into contractual agreements and the power to purchase, lease, and sell property and other interests of the county. Ariz. Rev. Stat. §§ 11-251(7)(9)(18)(19)(23)(26)(28)(29)(41)(42)(61) and 11-251.02(2)(3). The Court believes that an entity that is capable of entering into these types of agreements must also have the ability to judicially enforce the agreements or have these agreements judicially enforced against the entity. In addition, municipalities and other local governing bodies constitute "persons" who may be sued under § 1983. Monell, 436 U.S. at 690-91. The Board of Supervisors is a local governing body. See Ariz. Rev. Stat. § 11-251 et seq. Moreover, state law directs that the Board of Supervisors is responsible for the medical care of "persons under the supervision of a county corrections agency" and "may enter into contracts for the operation of a county health care system." See Ariz. Rev. Stat. § 11-291(A)(D).

Defendants cite nothing definitive regarding the MCBS' status as a non-jural entity, and the Court is not persuaded that MCBS cannot be sued. But the Court will dismiss the MCBS because Plaintiff has alleged no conduct sufficient to link MCBS to the harm. See Rizzo, 423 U.S. at 371-72. The only allegation that the Court can find regarding MCBS is that "the responsibility for overseeing the operations of MCSO personnel lies with Sheriff Arpaio and the County Board of Supervisors." (Doc. #8 ¶ 75.) That is insufficient to state a claim against MCBS, and MCBS will be dismissed. See Monell, 436 U.S. at 691-94; see also 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915(A)(b)(1); 42 U.S.C. § 1997e(c)(1).

### E. Miscellaneous

#### 1. Parties' Contentions

Maricopa County argues that a claim for punitive damages against the County must be dismissed because § 1983 does not authorize damages against local governmental entities.

1  (Doc. #17 at 11, citing City of Newport v. Fact Concerts, Inc., 453 U.S. 247, 271 (1981)).
2  Defendants argue that Plaintiff has stated no claim under the Privileges and Immunities
3  Clause of the Fourteenth Amendment or under 42 U.S.C. § 1985(3). (Doc. #17 at 12-13.)
4  They further argue that Plaintiff's claims amount to nothing more than claims of medical
5  negligence, which does not state a claim for a constitutional violation, and that Plaintiff does
6  not state an equal protection claim. (Id. at 14-15.) They assert that Plaintiff does not state
7  claims for cruel and unusual punishment under the Eighth Amendment or claims under the
8  Fourth Amendment. (Id. at 15-16.)

9  Plaintiff responds that he does not dispute dismissal of his request for punitive
10 damages as to Maricopa County but that individual Defendants may be held liable for such
11 damages. (Doc. #20 at 8.) He argues that his Fourteenth Amendment claims have been
12 adequately pled because he referred to the protections of the entire Amendment, not just the
13 Privileges and Immunities Clause, and he stipulates that the right to travel is not at issue. (Id.
14 at 8-10, ref. Doc. #8 ¶¶ 111-112.) Plaintiff argues that because he is epileptic, he is a
15 member of a distinctly protected class and that Defendants conspired to deprive him of his
16 medical care and therefore deprived him of the equal protections of the laws, in violation of
17 42 U.S.C. § 1985. (Id. at 9.) He asserts that the characterization of his claims as ones for
18 negligence are premature. (Id. at 9-10.) He further asserts that he adequately states a claim
19 for relief under 42 U.S.C. § 1983 because he alleges facts susceptible to an inference that
20 "defendants acted with intent or purpose to discriminate against Plaintiff based on his
21 membership in a protected class." (Id. at 13, citing Barren v. Harrington,152 F.3d 1193,1194
22 (9th Cir. 1998).) He contends that his claims for cruel and unusual punishment should be
23 evaluated under the Fourteenth Amendment. (Doc. #20 at 13-14.) Finally, Plaintiff asserts
24 that Defendants' actions in denying Plaintiff his medical information card constituted an
25 impermissible seizure and a violation of the Fourth Amendment. (Id. at 14-15.)

### 2. Analysis

27 The Court finds that Plaintiff states claims for denial of medical care and deliberate
28 indifference in violation of the Due Process Clause of the Fourteenth Amendment, which

states a claim under § 1983. (Doc. #8, e.g ¶¶ 104, 109.)  Plaintiff does not, however, state a claim for denial of equal protection; he has not pled intentional unlawful discrimination based on membership in a protected class and does not identify where in the First Amended Complaint he made such allegations. See Iqbal, 129 S. Ct. at 1947.  Nor does he state a claim under the Privileges and Immunities Clause.  "[T]he Privileges and Immunities Clause 'reliev[es] state citizens of the disabilities of alienage in other States. . . .'" Ponderosa Dairy v. Lyons, 259 F.3d 1148, 1156 (9th Cir.2001) (quoting Paul v. Virginia, 8 Wall. 168, 75 U.S. 168, 180, 19 L.Ed. 357 (1869)).  "Discrimination on the basis of out-of-state residency is a necessary element for a claim under the Privileges and Immunities Clause." Giannini v. Real, 911 F.2d 354, 357 (9th Cir.1990).  Plaintiff does not state a claim under the Eighth Amendment, which does not apply to pretrial detainees.  Moreover, Plaintiff does not state a claim under the Fourth Amendment; Plaintiff does not cite to an allegation that anyone seized a "medical information" card, and the Court is unable to locate one.  Plaintiff alleged that he told an intake nurse that the business card of his neurologist was in his wallet but he was not allowed to have access to the wallet, and the only reference to the Fourth Amendment states that the "wrongful conduct of Defendants as described herein constitutes deliberate indifference to [Plaintiff's] medical needs and thus violated his rights under the Fourth Amendment, Eighth Amendment, and/or Fourteenth Amendment. . . ."  (Doc. #8 ¶¶ 28, 112.)  This does not state a Fourth Amendment claim. See Iqbal, 129 S. Ct. at 1947.  The Court will also dismiss the claim for punitive damages against Maricopa County.

Plaintiff does not state a claim under 42 U.S.C. § 1985.  The only allegation referring to § 1985 states "[t]he County and the Sheriff have oversight and supervisory responsibility over their officers, employees, and agents with respect to MCSO matters.  They are entities and/or municipalities, directly liable under 42 U.S.C. § 1985." (Doc. #8, Third Cause of Action, ¶ 97.) To state a claim under § 1985(3), a plaintiff must allege: (1) a conspiracy; (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; (3) an act in furtherance of the conspiracy; (4) whereby a person is either injured in his person or

property or deprived of any right or privilege of a citizen of the United States. Carpenters Local 610 v. Scott, 463 U.S. 825, 828-29 (1983). The second element requires a showing of "some racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators" action." Id. at 829. A claim under this section must allege facts to support the allegation that defendants conspired, and a mere allegation of conspiracy is insufficient. Karim-Panahi v. L.A. Police Dep't., 839 F.2d 621, 626 (9th Cir. 1988). Here, the Third Cause of Action does not even allege a conspiracy, much less facts to support such an allegation.

**IT IS ORDERED:**

(1) Defendants Maricopa County, the Maricopa County Board of Supervisors and the Director of Correctional Health Services' Motion to Dismiss (Doc. #17) is **granted in part and denied in part** as follows:

    (a) The Maricopa County Board of Supervisors is dismissed;

    (b) The First and Second Causes of Action are dismissed with prejudice;

    (c) The Fifth Cause of Action is dismissed;

    (d) Unexhausted claims, as discussed in section IV(A) of this Order, are dismissed;

    (e) Claims for punitive damages against Maricopa County are dismissed with prejudice; and

    (f) Claims for denial of equal protection, denial of privileges and immunities, and violations of the Fourth Amendment, Eighth Amendment, and 42 U.S.C. § 1985(3) are dismissed.

(2) Defendant Joseph Arpaio and Ava Arpaio's Motion to dismiss (Doc. #18) is **granted,** and they are **dismissed** from the action.

(3) John Does I-X; Jane Does I-X; Black Corporations I-V; White Partnerships I-V; and XYZ Entities 1-10 are **dismissed**.

(4) The remaining claims are against the Director of CHS and Maricopa County for denial of medical care, in violation of the Fourteenth Amendment, for the period from

approximately July 17 to approximately July 21, 2008.

(5) This matter is referred to Magistrate Judge Burns pursuant to Rules 72.1 and 72.2 of the Local Rules of Civil Procedure for all pretrial proceedings as authorized under 28 U.S.C. § 636(b)(1).

DATED this 4th day of January, 2010.

_____
G. Murray Snow
United States District Judge